IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **TONY PEREZ WELCH,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No.: 7:19-CV-48 |
| ) | |
| v. ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | By: Hon. Robert S. Ballou |
| **VETERANS AFFAIRS,** ) | United States Magistrate Judge |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Tony Perez Welch ("Welch"), filed this action *pro se* alleging multiple wrongs committed by the Veterans Affairs Medical Center in Salem, Virginia ("Salem VAMC"), including medical battery, falsifying medical records, intentional infliction of emotional distress, and discrimination based on race, gender and disability. The Government moved to dismiss Welch's claims for lack of subject-matter jurisdiction and failure to state a claim. Welch subsequently moved for leave to file an amended complaint and filed a motion for sanctions against the Government for spoliation of evidence.

I find that oral argument will not aid the court with the pending motions, which have been fully briefed and are ripe for decision. I consider these motions pursuant to 28 U.S.C. § 636(b)(1)(B) and conclude that the court lacks subject matter jurisdiction over many of Welch's claims and that Welch fails to plead sufficient facts to support the remaining claims. Welch's motion to amend the complaint is futile, as his proposed amended complaint suffers from the same pleading defects as the original complaint. I **RECOMMEND GRANTING** the

1

Government's motion to dismiss (Dkt. 5), **DENYING** Welch's motion to amend complaint (Dkt. 14), and **DISMISSING** this case with prejudice.

A.   Factual Allegations

Welch's claims relate to his medical treatment at the Salem VAMC from 2000 through 2015 and focus on the VAMC's failure to properly diagnose a skin condition. Dkt. 1. Welch alleges multiple wrongs by the Salem VAMC, including misdiagnosing a skin condition (id. at p. 4), failing to inform him that he was diagnosed with non-alcoholic fatty liver disease (id.); refusing to refer him to a fee-based dermatologist in a timely manner (id. at pp. 11, 17); failing to coordinate his treatment with his non-VA doctors (id. at p. 15); injecting him with toxic mercury compound ingredient "thimerosal" in flu vaccines without his knowledge (id. at p. 5); failing to diagnose his severe allergic reactions to medications (id. at pp. 6, 7); being treated by an unqualified staff dermatologist (id. at p. 16); failing to prescribe orthopedic shoes (id. at p. 13); failing to prescribe medications and prescribing medications unnecessarily (id. at p. 10); and failing to schedule exams or other diagnostic tests (id.). Welch alleges that the medications prescribed by the Salem VAMC caused him physical and mental irreparable harm (id. at p. 7); that Salem VAMC doctors changed or erased information in his medical records (id. at 9); that he was sexually harassed during an exam in 2012 (id. at p. 13); and that a doctor divulged the history of his medical injuries and treatment to the doctor's wife. Id.

Welch's proposed amended complaint includes the same or substantially similar facts.[1] Dkt. 14-1. The amended complaint sets forth Wade's claims in separate sections titled: (1) failure to disclose adverse effects to patients under 28 C.F.R. § 14.11; (2) racial discrimination under

---

[1] The court entered an order taking Welch's motion to amend complaint under advisement and directing Welch to file the proposed amended complaint on the docket. Dkt. 15. The Government filed an opposition to Welch's motion to amend the complaint, asserting that it lacks subject matter jurisdiction and fails to state a claim and thus, allowing the amendment would be futile. Dkt. 17.

Title VI of the Civil Rights Act of 1964; (3); sex discrimination; (4) sexual harassment; (5) fraudulent concealment; (6) intentional infliction of emotional distress; (7) medical battery under the Federal Tort Claims Act; and (8) disability discrimination. Id. at pp. 47–53. Welch requests relief of compensatory damages, punitive damages, treble damages, equitable relief and reimbursement of various costs, including the cost of future non-VA medical care, court costs, mileage, office supplies, reimbursement of a personal trainer and gym expenses, reimbursement of litigation services, and attorneys' fees. Id. at p. 53.

B. **Procedural History**

Welch initiated his claim against the VAMC by filing a Standard Form 95 "Claim for Damage, Injury, or Death" ("SF-95") with the U.S. Department of Veterans Affairs ("VA") on January 25, 2017, stating as the basis of his claim:

> 20 + years of pain, suffering, emotional and physical scarring from service connected skin condition being misdiagnosed by doctors as Salem VAMC. Was frequently denied medical treatment for SC disease which later was diagnosed by an outside Allergist as Dermatitis Herpetiformis and numerous food allergies. Salem VA asked Primary Care (Family Med.) Dr. Suzanne Hanna to "fill in" for Dermatology Dept even though she is not licensed certified or have significant training in Dermatology. This was done to "cover up" the staff shortfall and she was given more pay which constituted an Improper motive for her working in Dermatology Dept.

Dkt. 6-1, p. 2. Welch also attached a SF-95 derivative claim for his son, alleging that his premature birth and complications arising therefrom were caused by the misdiagnosis of Welch's medical conditions. Id. at p. 5.

The VA sent Welch a letter dated September 29, 2017, informing him that it investigated the facts of his administrative tort claim and concluded that there was no negligent or wrongful act on the part of a VA employee under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Dkt. 6-2. The VA also denied Welch's claim on behalf of his minor son.

Id. The letter notified Welch of his ability to either request reconsideration of the decision or file a federal FTCA claim within six months. Id. On March 26, 2018, Welch requested reconsideration of his claim.[2] Dkt. 6-3. Welch filed this action on January 22, 2019. Dkt. 1.

### C. Legal Standard

#### 1. Rule 12(b)(1)

The Government moves to dismiss Welch's claims under Rule 12(b)(1) for lack of subject matter jurisdiction. A Rule 12(b)(1) motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Welch has the burden of proof to establish that the court has subject matter jurisdiction. Id. Additionally, in determining whether jurisdiction exists, the court is instructed to "'regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Id. (quoting Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).

#### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of Welch's complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F 2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of Welch. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

---

[2] The Government does not address whether the VA responded to Welch's request for reconsideration in its motions or briefing; however, the Government does not assert that Welch's action was filed outside of the six-month period provided by the FTCA. See 28 U.S.C. § 2401(b).

Legal conclusions in the guise of factual allegations are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, Welch must "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Id.

Because Welch is proceeding *pro se,* his pleadings must be "liberally construed" and "however inartfully pleaded . . . held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 93 (internal citation omitted). However, the court may not ignore a clear failure to allege facts sufficient to state a cognizable claim in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.")

**D.    Analysis[3]**

The VAMC is an arm of the Federal Government and Welch can only bring causes of action against it for which the Government has waived sovereign immunity. The Government has not waived sovereign immunity for many intentional torts; thus, the court lacks subject matter jurisdiction over Welch's claims sounding in assault, medical battery (e.g., testing him for HIV without his consent) and falsification of medical records.  Further, many of the claims for which the Government has waived immunity require that a plaintiff file certain administrative

---

[3] Welch's complaint and amended complaint are replete with rambling allegations of wrongdoing by the Salem VAMC.  The analysis herein is based upon the facts and allegations contained in both the complaint and amended complaint in an effort to construe all of Welch's allegations liberally.

documents before bringing a lawsuit, and/or include specific time periods (statutes of limitation) within which the lawsuit must be brought. Many of Welch's allegations occurred outside of the applicable statutes of limitation or were not administratively filed. Welch's remaining claims do not include the facts and allegations necessary to state a cognizable claim.

### 1. Federal Tort Claims Act

#### a) Intentional Torts

As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity. United States v. Sherwood, 312 U.S. 584, 586 (1941). All waivers of sovereign immunity must be strictly construed in favor of the sovereign. Welch v. United States, 409 F.3d 646, 650–51 (4th Cir. 2005). It is Welch's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his claims. Id. at 652. If the plaintiff fails to meet this burden, the claim must be dismissed. Id.

The Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The FTCA is "the sole remedy for any injury to person or property caused by the negligent or wrongful acts of a federal employee 'acting within the scope of his office or employment.'" Jamison v. Wiley, 14 F.3d 222, 227 (4th Cir. 1994) (quoting 28 U.S.C. § 2679(b)(1)). The FTCA's limited waiver of sovereign immunity does not include "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Thus, Welch's claims that sound in assault and medical battery are barred by sovereign immunity. Further, "[t]he misrepresentation exception deprives courts of jurisdiction over tort claims based on a plaintiff's reliance on governmental misinformation or

failure to communicate correct information." Roper Hosp., Inc. v. United States, 869 F. Supp. 362, 367 (D.S.C. 1994); see also Talbert v. United States, 932 F. 2d 1064, 4067 (4th Cir. 1991). Welch's claim for fraudulent concealment alleges that the Salem VAMC concealed Welch's diagnosis, treatment options and the extent of his injuries. Dkt. 14-1, p. 49. Welch's claims for fraudulent concealment relating to his medical records and/or negligent recordkeeping are barred under the misrepresentation, libel and slander exceptions to the FTCA.

### b)      Exhaustion of Administrative Remedies and Timeliness

An individual must make an initial presentation of an FTCA claim to the appropriate federal agency within two years of the accrual of the cause of action. See 28 U.S.C. § 2401(b) ("[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...."). Presenting an administrative claim within the two-year time period is "[a] key jurisdictional prerequisite to filing suit under the FTCA." Kokotis v. United States Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000). Suit must also be initiated within six months of the mailing of the agency's final decision. 28 U.S.C. § 2401(b).

The two-year limitation period of 28 U.S.C. § 2401(b) cannot be tolled or waived. Gould, 905 F. 2d. at 742 (internal citations omitted); see Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986) ("[T]he requirement of filing an administrative claim is jurisdictional and may not be waived.") "To present a personal injury claim to the appropriate administrative agency, the claimant must present it to the agency in writing by means of an SF 95 or an equivalent; the writing must include a claim for money damages in a sum certain…and these matters must be accomplished within two years of the incident." Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994).

Welch presented his claims to the VA by filing an SF-95 on January 25, 2017, claiming, generally: (1) misdiagnosis of his skin condition; (2) denial of medical treatment; (3) treatment by an unqualified physician; and (4) concealment or cover up of staff shortage. Dkt. 6-1, p. 2. These are the only claims that were administratively presented to the VA as required under the FTCA; thus, all other claims have not been administratively exhausted.[4]

Further, Welch's claims accruing more than two years before he filed the SF-95 are time barred. Welch was required to make an initial filing with the appropriate administrative agency no later than two years after his claims accrued. A cause of action accrues under the FTCA when the plaintiff knows, or in the exercise of due diligence, should have known, of the existence of the injury and its cause. United States v. Kubrick, 444 U.S. 111, 123–25 (1979). A claim relating to medical treatment will accrue "even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury." Hahn v. United States, 313 Fed. Appx. 582, 585 (4th Cir. 2008). Here, Welch alleges various injuries sustained from 2000 through 2015, generally relating to the Salem VAMC's ineffective treatment of his skin condition. Welch's complaint and amended complaint include many claims related to his medical treatment that accrued more than two years before he filed his SF-95 form with the VA. Further, the facts supporting Welch's claim of intentional infliction of emotional distress occurred in 2001 (Dkt. 1 at p. 10; 14-1 at p. 20–21), and his allegations relating to sexual harassment occurred in 2012.[5] Dkt. 1 at p. 13; 14-1 at p. 36.

---

[4] Welch's request for reconsideration contains a litany of accusations and allegations that were not part of his SF-95 form and could be construed to state additional claims, such as: failure to disclose adverse events, medical battery, intentional overmedication, failure to include "black box warning," sexual harassment, privacy violations, and violations of sundry state and federal laws. Dkt. 6-3. The facts supporting these claims occurred between the years 2000 and May 2015, all over two years before Welch filed his request for reconsideration on March 26, 2018. Id.

[5] Welch claims that on March 22, 2012, he told his female doctor that he had blisters on his penis that were healed, and she "silently walked up to [sic] Plaintiff and put both of her hands on the button (above the zipper) of his

Welch's claims as to those events are time-barred and the court lacks subject matter jurisdiction over those claims. See Regan v. U.S. Dept. of Veterans Affairs, No. 5:11cv422-D, 2012 WL 4866360, at *4 (E.D.N.C. July 25, 2012).

### c) Expert Opinion

Welch's remaining FTCA claims that were administratively exhausted and timely filed all allege negligence in medical care and thus fall under the Virginia Medical Malpractice Act ("VMMA").[6] The VMMA defines "malpractice" as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Va. Code. Ann. § 8.01-5814. Welch's complaints that Salem VAMC officials misdiagnosed and failed to properly treat his skin condition clearly fall within the statutory definition of malpractice in Virginia. See Starns v. United States, 923 F.2d 34, 37 (4th Cir. 1991) (applying VMMA in FTCA action involving federally operated health care providers in Virginia).

The VMMA requires a plaintiff to obtain certification from an expert witness that his claim has merit before serving process on the defendant. Va. Code Ann. § 8.01-20.1. This requirement applies to claims brought against the United States pursuant to the FTCA, and the

---

jeans then looked up at him. He immediately placed his hands on top of hers so to prevent her from any attempt to unbutton his jeans." Dkt. 14-1, p. 36. The doctor noted in Welch's record that he refused to have that area of his body checked. Id. Welch filed a sexual harassment complaint against the doctor with a patient advocate on March 22, 2012. Id. Welch alleges that his sexual harassment complaint was "never investigated, questioned, taken seriously, believed to be true or held to the standards of VHA policies, rules, federal regulations, federal laws and International Treaties." Id. at 48.

These facts occurred in 2012, well outside the two-year statute of limitations. Further, Welch's claim for sexual harassment is barred by sovereign immunity. An action under the FTCA may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred. 28 U.S.C. §1346(b). Sexual harassment, in and of itself, is not a separate cause of action in Virginia. See Sutphin v. United American Ins. Co., 154 F. Supp. 2d 906, 908 (W.D. Va. 2000). Thus, because a private person would not be liable for sexual harassment under Virginia law, the United States has not waived its sovereign immunity.

[6] These are the claims included in Welch's SF-95 of misdiagnosis of his skin condition, denial of medical treatment, treatment by an unqualified physician, and concealment or cover up of staff shortage, which accrued within two years of January 25, 2017.

failure to comply with the requirement is fatal to a plaintiff's claim. See Moody v. DeJesus, No. 7:08cv432, 2009 WL 187682, at *2 (W.D. Va. Jan 23, 2009); Bond v. United States, No. 1:08cv324, 2008 WL 4774004, at *2–3 (E.D. Va. Oct. 27, 2008); Parker v. United States, 475 F.Supp.2d 594, 597 (E.D. Va. 2007), aff'd, 251 Fed. Appx. 818 (4th Cir. 2007).

The VMMA provides a limited exception to the certification requirement; the requirement may be excused where a complaint "asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." This exception applies only in "rare instances" because only rarely do the alleged acts of medical negligence fall within the range of a jury's or factfinder's common knowledge and experience. Beverly Enterprises–Virginia v. Nichols, 441 S.E. 2d 1 (Va. 1994) (applying the common knowledge exception where a nursing home failed to prevent the choking death of a patient when they had previously been warned that the patient needed assistance while eating.)

Here, Welch's claims of negligence do not "clearly lie[] within the range of the jury's common knowledge and experience." Va. Code Ann. § 8.01-20. See Bond, 2008 WL 4774004, at *2–3 (expert testimony necessary where plaintiff claims that prison medical staff's failure to provide with him an orthopedic examination for a finger injury within two months deviated from the applicable standard of care and the delay was the proximate cause of his allegedly permanent damage); Parker, 475 F. Supp. 2d at 597 (expert testimony is necessary where plaintiff alleges that medical staff negligently failed to diagnose and treat his neurological impairment); Raines v. Lutz, 341 S.E.2d 194, 196 (Va. 1986) (recognizing that, in cases involving claims of medical negligence, "expert testimony is ordinarily necessary to establish the appropriate standard of care, to establish a deviation from the standard, and to establish that such a deviation was the

10

proximate cause of the claimed damages"). "Where, as here, a plaintiff calls into question a quintessential professional medical judgment, the matter can be resolved *only* by reference to expert opinion testimony." Parker, 475 F. Supp. 2d at 598 (emphasis in original) (internal quotations and citations omitted).

The record does not reflect that Welch obtained the requisite written expert certification. On June 14, 2019, the Government requested that Welch certify that he obtained the necessary expert opinion when he requested service of this action on the United States. Dkt. 6-4. There is no indication on the record that Welch responded to the Government, or that he obtained the certification of an expert prior to serving either complaint in this case. The Government raised this issue in its motion to dismiss, and Welch did not mention or provide the certification in his response to the motion to dismiss. Likewise, Welch did not indicate that he obtained the required certification in his proposed amended complaint. The burden is on Welch to provide certification, when called upon to do so, that an expert has provided an opinion that the care provided at the VAMC deviated from the standard of care. Moody, 2009 WL 187682, at *2. Welch failed in this regard, and his failure is fatal to his medical negligence claims. Without the certification, Welch's FTCA medical claims cannot proceed. Parker, 475 F. Supp. 2d. at 597.

  **2.**  **Discrimination Claims**

    **a)**  **Race Discrimination, Title VI, 42 U.S.C. § 2000d**

Welch alleges that he was "continually and persistently discriminated against …based upon his race," by his Caucasian primary care doctor who "deliberately gave false lab results, doctored his medical records, including canceling consultations he needed desperately and prolonged him receiving timely medical care being 'secretly' diagnosed with numerous life-

11

threatening diseases and illnesses [] which require constant medical intervention and monitoring." Dkt. 14-1, p. 47.[7]

Section 601 of Title VI of the Civil Rights Act of 1964 provides, "[n]o person in the United States shall, on the ground of race, color or national origin, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d. To state a claim under Title VI, a plaintiff must allege facts showing that the defendant intentionally discriminated against him on the basis of race, color, or national origin, and that defendant receives federal financial assistance. Alexander v. Sandoval, 532 U.S. 275, 280 (2001); see also Hodge v. Coll. of S. Maryland, 121 F.Supp.3d 486, 501–02 (D. Md. 2015) (Title VI requires that a plaintiff plausibly allege intentional discrimination).

Following this framework, Welch's complaints fail to state a claim for racial discrimination. Welch provides only conclusory assertions devoid of factual support that the alleged failures in his medical treatment were motivated by his race. Welch's allegations of misdiagnosis, failure to treat and other medical wrongs, together with notations that his physician was Caucasian while he is African-American are insufficient to state a claim of race discrimination. See Ratliff v. Wake Forest Baptist Med. Ctr., No. 1:13cv991, 2014 WL 197809, at *2–3 (M.D.N.C. Jan. 14, 2014) ("Simply invoking the term 'racial discrimination' does not suffice to state a claim.") Welch does not describe medical treatment received by similarly situated individuals of another race. Welch's complaints lack any factual allegations consistent

---

[7] The Government asserts that this claim is time-barred under the two-year statute of limitations that apply to Title VI claims in Virginia; however, the facts set forth in Welch's amended complaint can be construed to assert discriminatory conduct as late as January 2017. See Dkt. 14-1, p. 46 ("Neurologist and the Physical Therapist Plaintiff saw at the Salem VAMC on January 04th and January 24th, 2017, intentionally fabricated false treatment diagnosis' [sic] and statements, then inserted into his medical records knowing they were false. The doctor and therapist are Caucasian, and the Plaintiff is African-Americn.")

12

with either direct evidence of racial discrimination or any inference of racial discrimination. Accepting Welch's factual allegations as true, the allegations do not provide a plausible inference that Welch was discriminated against by his medical providers at the Salem VAMC based on his race. See, e.g., Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") Accordingly, Welch's complaint and amended complaint fail to state a claim for race discrimination.

### b) Disability Discrimination, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)

Welch alleges disability discrimination under section 504 of the Rehabilitation Act, because he was "refused treatment and services that [were] ordinarily and regularly provided to other Veterans with similar injuries." Dkt. 14-1, p. 52. In support, Welch specifically notes that he was entitled to receive orthopedic inserts or shoes but "was refused and made fun of in his own medical records by the doctor who treated him." Id. at p. 53. Section 504 of the Rehabilitation Act of 1973 requires that any program or activity receiving federal financial assistance not discriminate based on disability. 29 U.S.C. § 794. To state a claim of discrimination under the Rehabilitation Act, a plaintiff must show that he or she was discriminated against solely based on a disability. Id. The Fourth Circuit has held that claims under § 504 are governed by a one-year statute of limitations in Virginia. Wolskey v. Med. Coll. of Hampton Roads, 1 F. 3d 222, 224–225 (4th Cir. 1993). A Rehabilitation Act claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis for the action." Hill v. Hampstead Lester Morton Court Partners LP, 581 F. App'x 178, 180 (4th Cir. 2014) (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)).

13

Here, Welch has not alleged a qualifying disability, nor facts to support a claim of discrimination based upon a disability. Further, the only references to Welch's denial of orthopedic shoes in the complaint or amended complaint occur in the year 2000, well outside of the limitations period.[8] See Dkt. 1, p. 13; 14-1, p. 17.

### 3. Privacy Act

Welch's amended complaint alleges violations of the Privacy Act, 5 U.S.C. §522a. Specifically, Welch alleges that his medical records from the VA are incomplete and incorrect, for example, listing him as a white male when he is African-American. Dkt. 14-1, pp. 7–9. Welch also alleges that many of his prescription and treatment records were erased or had the dates changed after he filed his complaint in this case. Id. Welch further alleges that his records were disclosed without his consent when a psychiatric intern told him "[m]y wife's a lawyer and last night I spoke to her about your case and everything that you're going through." Dkt. 14-1, p. 4.

The Privacy Act creates a procedure whereby a citizen can gain access to personal files held by federal agencies and seek correction of factual inaccuracies. The Privacy Act requires that an agency "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness to the individual in the determination." See 5 U.S.C. §552a(e)(5). It permits an individual to request an amendment to a record pertaining to him and requires that the agency either promptly correct the record or explain its reasons for refusing to amend. Id. at

---

[8] Welch also includes a claim labeled "gender discrimination" that relates to his sexual harassment complaint against a female doctor at the VAMC. Dkt. 14-1, p. 48. The complaint and amended complaint provide no factual support for Welch to assert a claim of gender discrimination. Welch's claim for sexual harassment is barred by sovereign immunity because it is not a claim recognized in Virginia law, and further, the alleged harassment occurred outside of the applicable statute of limitations.

14

§ 552a(d)(2). If the request to amend is denied, the individual may request an administrative appeal, and if that appeal denies the requested relief, the individual is entitled to place a concise statement of his disagreement in his file. See 5 U.S.C. § 552a(d)(3). An individual may bring a civil action if the agency declines to amend the record or fails to maintain accurate records and the plaintiff suffers an adverse determination as a result of the agency's decision. Id. at §552a(g)(1)(C). Additionally, the Privacy Act prohibits the disclosure of records without an individual's consent, subject to certain exceptions, see 5 U.S.C. § 552a(b).

To maintain a cause of action for violation of the maintenance provision of the Privacy Act, a plaintiff must allege sufficient facts to show (1) the agency's failure to maintain accurate records; (2) an adverse agency determination resulting from the inaccurate records; and (3) the willful or intentional quality of the agency's action. See Melvin v. Soc, Sec. Admin., 126 F.Supp.3d 584, 604 (E.D.N.C. 2015); White v. Office of Pers. Mgmt., 840 F.2d 85, 87 (D.C. Cir. 1988). To rise to the level of willful or intentional violations of the Act, the disclosures must be "grossly negligent, committed with flagrant disregard of the Plaintiff's rights, and without grounds for believing the disclosures to be lawful." Walker v. Gambrell, 647 F.Supp.2d 529, 538 (D. Md. 2009) (citing Scrimgeour v. Internal Revenue, 149 F.3d 318, 326 (4th Cir. 1998).

Welch's allegations fail to state a claim under the Privacy Act. Even if the court broadly construes Welch's claims to establish that the VA falsified his medical records willfully or intentionally, Welch fails to allege an adverse agency determination arising from the alleged inaccuracies in his records. See Doe v. Chao, 306 F.3d 170, 186 (4th Cir. 2002) ("[A]n adverse effect must be something distinct from the intentional and willful violation itself.")

The Privacy Act also includes a statute of limitations requiring that an action be brought within two years from the date on which the cause of action arises. 5 U.S.C. § 552a(g)(5).

Welch's allegations regarding disclosure of information without his consent relate to psychiatric intern "Brian Buford" who told Welch "[m]y wife's a lawyer and last night I spoke to her about your case and everything that you're going through," "you won't win your case, just give it up. It's too big for you!" Dkt. 14-1, p. 4. While there is no date specifically provided in this section of Welch's amended complaint, other portions of his amended complaint refer to treatment with "intern Buford" in 2001, and do not refer to treatment with Buford in later years. Dkt. 14-1, pp. 20–21. Thus, Welch's complaint, filed in January 2019, was well beyond the applicable two-year statute of limitations.

### E.     Conclusion[9]

This Court is under an obligation to read a *pro se* litigant's objections broadly. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). However, a district court may not rewrite a complaint to include claims that were never presented or construct the plaintiff's legal arguments for him. Bryant v. Malbus, No. L-10-2206, 2011 WL 2436547, at *2 (D. Md. June 13, 2011). *Pro se* plaintiffs must still do more than a "formulaic recitation of the elements of a cause of action." Hansen v. Siemens Energy, 3:12-CV-00370-GCM, 2012 WL 5388920, at *2 (W.D.N.C. Nov. 1, 2012) (citing Twombly, 550 U.S. at 555). Welch's claims, liberally construed, do not fall within this court's subject matter jurisdiction or fail to state a claim upon which this court can grant relief.

For the foregoing reasons, the I **RECOMMEND GRANTING** the Government's motion to dismiss (Dkt. 5), **DENYING** Welch's motion to amend his complaint (Dkt. 14), and

---

[9] Welch's complaint and amended complaint include a diatribe of allegations and cite to multiple statutes and titles, for example, the Veterans Health Benefits Handbook, the Health Insurance Portability and Accountability Act ("HIPPA"), the Declaration of Human Rights, etc. Welch does not state any actual claims as to these matters. The only discernable claims set out in the complaint and amended complaint are discussed in this report and recommendation.

**DISMISSING** this case with prejudice. While courts are normally hesitant to dismiss a *pro se* litigant's complaint for failure to state a claim pursuant to Rule 12(b)(6) without granting leave to amend his complaint, I find such a dismissal warranted in this case. Welch has already attempted to amend his complaint, after having the benefit of reviewing the Government's motion to dismiss. Dkt. 14-1. Welch's amended complaint contains substantially the same facts and allegations as his original complaint, all of which either lack subject matter jurisdiction in this court or fail to state cognizable claims, as set forth above. There is no suggestion in Welch's amended complaint that additional evidence exists to bolster his claims or support a potentially cognizable claim. Accordingly, I **RECOMMEND DISMISSING** Welch's claims with prejudice.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached

by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: December 4, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge